IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

| | | |
|---|---|---|
| JEREMY BENTLEY, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 7:15-cv-0084-MHH-JEO |
| | ) | |
| ALABAMA DEPARTMENT OF MENTAL HEALTH, and ANNIE JACKSON in her official capacity as Director of Taylor Hardin Secure Medical Facility, | ) ) ) ) ) | |
| | ) | |
| Respondents. | ) | |

## MEMORANDUM OPINION

In this habeas action, Mr. Bentley asserts a Fourteenth Amendment due process challenge to his continued commitment to Taylor Hardin Secure Medical Facility in Tuscaloosa, Alabama. (Doc. 1). The circumstances surrounding Mr. Bentley's confinement are complex and somewhat puzzling, but this much is certain: to date, Mr. Bentley has not filed a state court motion for release from confinement, and he has not presented his constitutional challenge to his continued confinement in a state court. As a result, this Court cannot reach the constitutional issue in this federal habeas proceeding.

For 15 years, Mr. Bentley has resided at Taylor Hardin pursuant to a state court commitment order. In the commitment order, a state circuit court judge found that Mr. Bentley was not guilty of the crime charged against him "by reason of mental disease or defect," that Mr. Bentley was "mentally ill," and that Mr. Bentley's "being at large pose[d] a real and present threat of substantial harm to himself and others." (Doc. 14-2, p. 2). Based on his findings, the state circuit court judge committed Mr. Bentley to the custody of the Alabama Department of Mental Health for "treatment and therapy." (Doc. 14-2, p. 2).[1] According to expert testimony, the "mental disease or defect" for which Mr. Bentley requires treatment and therapy is dissociative identity disorder and either paranoid schizophrenia or paranoid delusional disorder. (Doc. 14-1, p. 3).

For years, Taylor Hardin has refused to provide "treatment and therapy" to Mr. Bentley for dissociative identity disorder because the psychiatrists at Taylor Hardin disagree with the state circuit court's finding that Mr. Bentley is mentally ill. (Doc. 14-1, pp. 11-12; Doc. 14-10, p. 3). Mr. Bentley also disagrees with the finding. Shortly after he learned that he no longer could be prosecuted for capital

---

[1] Alabama's circuit courts are trial courts. The Alabama Court of Criminal Appeals hears challenges to circuit court criminal rulings and judgments. Review of decisions of the Alabama Court of Criminal Appeals may be had by petition for writ of certiorari to the Alabama Supreme Court.

murder, he declared that he had faked his mental illness to avoid prosecution. (Doc. 14-1, pp. 5, 8).

In 2011, the Alabama Department of Mental Health asked the state circuit court to release Mr. Bentley from Taylor Hardin. (Doc. 14-3, pp. 2-3). The Department asserted that Mr. Bentley had "received the maximum benefit of treatment from the Department" and that the Department's professionals opined that Mr. Bentley "show[ed] no signs or symptoms of a mental illness and ha[d] no mental disorder for which any appropriate treatment [was] available in a Department facility." (Doc. 14-3, p. 2). The State of Alabama opposed Mr. Bentley's release. In 2012, following an evidentiary hearing, the circuit court judge determined by a preponderance of the evidence that Mr. Bentley still suffers from "a serious and treatable mental illness[,]" namely dissociative identity disorder, and that Mr. Bentley is "extremely dangerous[.]" (Doc. 14-1, pp. 23, 24).[2] Therefore, the state

---

[2] The Department of Mental Health presented testimony from the Director of Psychology Services at Taylor Hardin and a psychiatrist who saw Mr. Bentley between April 2011 and December 2011. The State of Alabama presented testimony from the two experts who evaluated Mr. Bentley for his criminal trial. At the trial stage, Mr. Bentley retained one of the experts, and the State retained the other expert. At the trial stage and at the 2011 evidentiary hearing, both experts opined that Mr. Bentley suffers from dissociative identity disorder. (Doc. 14-1, p. 3).

In 2004, after reviewing the opinions of Mr. Bentley's mental health expert and the State's mental health expert, the Court of Criminal Appeals stated that Mr. Bentley "presents one of the most disturbing portraits of mental illness in a criminal defendant that can be imagined." *Bentley v. State*, 904 So. 2d 351, 363 (Ala. Crim. App. 2004). The Court of Appeals' decision contains a discussion of Mr. Bentley's psychiatric history, including psychiatric interventions in childhood and "a history of suicide attempts." 904 So. 2d at 355, 357. At the trial stage, the State's expert

circuit court denied the Alabama Department of Mental Health's request to release Mr. Bentley. (Doc. 14-1, pp. 24, 25).

According to Mr. Bentley, the professionals at Taylor Hardin still have not treated him for a mental disorder because they do not believe he suffers from a serious mental illness. (Doc. 14-10, p. 3).[3] The record indicates that even if the professionals at Taylor Hardin were willing to accept the trial court's finding that Mr. Bentley suffers from dissociative identity disorder, the Alabama Department of Mental Health does not employ anyone who is qualified to provide treatment for the disorder. (Doc. 14-1, p. 25).

Mr. Bentley argues that he effectively is perpetually confined at Taylor Hardin because the respondents do not believe he has dissociative identity disorder "or any other serious mental illness" for which he needs treatment, and "[w]ithout treatment, the nature [of his] commitment bears no reasonable relation to the purpose for which

---

recounted Mr. Bentley's report that he enjoyed killing. 904 So. 2d 357. Mr. Bentley's expert testified that Mr. Bentley believes that he "was programmed from birth to kill." 904 So. 2d at 355.

In 2011, the two experts reaffirmed their diagnoses of dissociative identity disorder. One of the experts opined that one of Mr. Bentley's "alters" or personalities is "confident, socially adept, [and] assertive." (Doc. 14-1, p. 17). This alter "does not exhibit psychotic symptoms" and wants to be released from Taylor Hardin. (Doc. 14-1, p. 18). The other expert offered a similar assessment of Mr. Bentley's alters. (Doc. 14-1, pp. 17-20).

[3] The Director of Psychology Services at Taylor Hardin has opined that Mr. Bentley "does suffer from mild, situational, depression" which is "not considered a serious mental illness." (Doc. 14-10, p. 3).

4

he was committed." (Doc. 1, p. 3). To secure his release from Taylor Hardin, Mr. Bentley filed this habeas action pursuant to 28 U.S.C. § 2254. (Doc. 1). Mr. Bentley has named as respondents the Alabama Department of Mental Health and the Director of Taylor Hardin. (Doc. 1, p. 1).

In his petition, Mr. Bentley does not challenge a particular state court order. Rather, he asserts that he "has no constitutionally adequate procedures available to him that will allow him to progress toward less restrictive placement, conditional release or unconditional release under Alabama's system of review of commitments." (Doc. 1, p. 4; *see also* Doc. 1, p. 5).[4] Mr. Bentley contends that his "continued confinement" violates his "right to Due Process under the 14th Amendment to the United States Constitution" and is "an unreasonable application of clearly established federal law." (Doc. 1, p. 4). He submits that even if the

---

[4] Rule 25.8(b) of the Alabama Rules of Criminal Procedure sets forth the procedure for relief from a mental illness commitment order pursuant to Rule 25.6 of the Alabama Rules of Criminal Procedure. Rule 25.8(b) provides, among other things, that an individual potentially may obtain relief from a commitment order "if certain conditions" are imposed upon release to prevent the individual from posing "a real and present threat of substantial harm to himself or to others by being at large." Rule 25.8(f) states:

> If the court determines that the defendant is still mentally ill but no longer poses a real and present threat of substantial harm to himself or to others by being at large if the defendant's release is accompanied by certain conditions, the court shall order his release subject to those conditions necessary to prevent the defendant from posing a real and present threat of substantial harm to himself or to others.

Ala. R. Crim. P. 25.8(f).

respondents were ordered to treat him, "there is no reason to expect that [they] could ever ethically, earnestly, and effectively" provide treatment for a serious mental illness that they do not believe exists, making release the only viable alternative. (Doc. 1, p. 5). Mr. Bentley also contends that there is no ordinary state court procedure that he may use to challenge his confinement, "and resort to extraordinary relief, such as mandamus, is not required for exhaustion." (Doc. 1, p. 6). The respondents agree that Mr. Bentley "should be released from [the Alabama Department of Mental Health's] custody." (Doc. 14, p. 6).

In his thoughtful report and recommendation, the magistrate judge recommended that the Court deny Mr. Bentley's habeas petition. (Doc. 18). Mr. Bentley objects to the report and recommendation. (Doc. 19). A district court "may accept, reject, or modify, in whole or part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). When a party objects to a report and recommendation, a district court must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* Although § 636(b)(1) "does not require the [district] judge to review an issue *de novo* if no objections are filed, it does not preclude further review by the district judge, *sua sponte* or at the request of a party, under a *de novo* or any other standard." *Thomas v. Arn*, 474 U.S. 140, 154 (1985). That is because

6

for dispositive issues, "the ultimate adjudicatory determination is reserved to the district judge." *United States v. Raddatz*, 447 U.S. 667, 675 (1980). Th Court has reviewed the state court documents in the habeas record, and the Court has considered Mr. Bentley's arguments and the Department of Mental Health's response to Mr. Bentley's habeas petition. Because the record demonstrates that Mr. Bentley has not exhausted available state court remedies, the Court will dismiss this habeas action without prejudice.

Exhaustion of state avenues for constitutional relief is a prerequisite for a § 2254 habeas petition. *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("Before a federal court may grant habeas relief," the petitioner "must exhaust his remedies in state court."). The exhaustion requirement rests on the principle of comity: when an individual asserts that his "continued [state] confinement . . . violate[s] federal law, the state courts should have the first opportunity to review this claim and provide any necessary relief." 528 U.S. at 844. A petitioner "must give the state courts one full opportunity to resolve any constitutional issues" regarding his confinement "before he presents those claims to a federal court in a habeas petition." 526 U.S. at 842, 845.

The exhaustion requirement is codified in 28 U.S.C. § 2254. Section 2254(c) provides:

> An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

28 U.S.C. § 2254(c). The exhaustion requirement is not without limits. A habeas petitioner does not have to "file repetitive petitions for state relief" or "invoke extraordinary remedies" like a petition for a writ of mandamus if "the state courts have not provided relief through those [extraordinary] remedies in the past." *O'Sullivan*, 526 U.S. at 844. "Section 2254(c) requires only that state prisoners give state courts a *fair* opportunity to act on their claims." 526 U.S. at 844 (emphasis in *O'Sullivan*).

Here, Mr. Bentley has not presented his Fourteenth Amendment due process claim to a state trial court or to a state appellate court. In fact, Mr. Bentley has filed nothing in state court seeking his release from Taylor Hardin. Only the Alabama Department of Mental Health has asked the state circuit court to release Mr. Bentley

from Taylor Hardin. (Doc. 14-3).⁵ Taylor Hardin did not – and likely could not – present Mr. Bentley's federal constitutional claim to a state court.⁶

Rule 25.8(b) of the Alabama Rules of Criminal Procedure supplies a means for Mr. Bentley to present his federal constitutional challenge to his continued commitment to Taylor Hardin. Under Rule 25.8(b), a criminal defendant "committed to the custody of the commissioner or a facility" after being found not guilty by reason of a mental disease or defect may file a motion for release from custody based on an assertion that "the defendant is no longer mentally ill." Ala. R. Crim. P. 25.8(b). The Alabama Court of Criminal Appeals has held that Rule 25.8 and Alabama's Criminal Psychopath Release Restriction Act, Ala. Code §§ 15-

---

⁵ The record indicates that Mr. Bentley's only written state court submission since his commitment to Taylor Hardin is a 2013 mandamus petition in which Mr. Bentley asked the Alabama Court of Criminal Appeals to permanently stay a state circuit court order that called for Mr. Bentley's transfer from Taylor Hardin to the Alabama Department of Corrections for mental health treatment. The Alabama Court of Criminal Appeals denied Mr. Bentley's mandamus petition because the petition was untimely and because Mr. Bentley did not "first present[] to the [state] circuit court" the "constitutional issue" of Double Jeopardy "raised in [his] extraordinary petition" for writ of mandamus. (Doc. 1-4, p. 2). There is a sentence in a circuit court order that suggests that Mr. Bentley raised in the circuit court due process and double jeopardy arguments concerning the transfer order. (Doc. 14-9, p. 3). This Court does not see a written motion to that effect in the record. If there is such a motion in the record, the challenge concerning the transfer order does not speak to Mr. Bentley's due process challenge to his continued confinement at Taylor Hardin.

⁶ For the Alabama Department of Mental Health to raise Mr. Bentley's due process challenge to his continued confinement, the Department would have to establish its standing to assert Mr. Bentley's constitutional right. *See Kowalski v. Tesmer*, 543 U.S. 125 (2004) (explaining the prudential limits on the doctrine of standing which, as a general rule, prevent third-parties from litigating constitutional rights that do not belong to them).

9

16-60 *et seq.*, "effectively amend and replace § 15–21–3, the habeas corpus statute, with respect to persons who are committed after the entry of a verdict of not guilty by reason of mental disease or defect." *Alabama Dept. of Mental Health and Mental Retardation ex rel McClothan*, 873 So. 2d 1176, 1180 (Ala. Ct. Crim. App. 2003). Taylor Hardin's Rule 25.8 motion for Mr. Bentley's release does not foreclose a motion from Mr. Bentley for his release. Under Rule 25.8(b), a defendant may file a motion for release from custody every six months. In his motion, Mr. Bentley may present evidence that he believes supports his release (he is not limited to the evidence that the Department presented), and he may raise his constitutional challenge to his continued confinement at Taylor Hardin.

If the trial court denies his motion for release, to fully exhaust his state remedies, Mr. Bentley must petition the Alabama Court of Criminal Appeals for a writ of mandamus. In *O'Sullivan*, the Supreme Court excluded from exhaustion requirements extraordinary remedies like mandamus petitions when "the state courts have not provided relief through those [extraordinary] remedies in the past." *O'Sullivan*, 526 U.S. at 844. Because the Alabama Court of Criminal Appeals provided relief to the Alabama Department of Mental Health when the Department filed a petition for writ of mandamus relating to the circuit court's disposition of the Department's Rule 25.8 motion concerning Mr. Bentley (Doc. 14-6, pp. 2-4), there

is no reason to believe that the appellate court would not also consider a mandamus petition from Mr. Bentley.[7]

In addition to a Rule 25.8 motion, Mr. Bentley may present his due process challenge to his continued confinement in a contempt motion. As discussed, the state circuit court judge committed Mr. Bentley "to the custody of the Alabama Department of Mental Health" for "treatment and therapy" (Doc. 14-2, p. 2), but the Alabama Department of Mental Health has refused to treat Mr. Bentley for anything other than depression since 2007. (Doc. 14-1). The Alabama Department of Mental Health has not tried to treat Mr. Bentley for the serious mental illness for which he was confined, and, as stated, the Department has no one on staff capable of treating Mr. Bentley for dissociative identity disorder.

---

[7] In *O'Sullivan*, the United States Supreme Court stated: "We have also held that state prisoners do not have to invoke extraordinary remedies when those remedies are alternatives to the standard review process and where the state courts have not provided relief through those remedies in the past." 526 U.S. at 844. Thus, per *O'Sullivan*, for an extraordinary state procedure like mandamus to be excused from the exhaustion requirement, the procedure must be an alternative to a standard means of review, and the extraordinary procedure must be one that is unavailable as a practical matter because the state appellate court has refused to provide relief pursuant to the extraordinary procedure.

Alabama's extraordinary writ of mandamus satisfies the first requirement for excusing exhaustion with respect to appellate review of Rule 25.8 orders because under Alabama law, a mandamus petition is the only means of review of a Rule 25.8 order; there is no right of appeal from a Rule 25.8 order. *McClothan*, 873 So. 2d at 1181. As stated, a petition for writ of mandamus does not satisfy the second requirement because Alabama's courts of appeal have provided relief in Rule 25.8 proceedings via writs of mandamus.

The Department of Mental Health may not refuse to follow the state circuit court order requiring treatment for Mr. Bentley.

> All orders and judgments of courts must be complied with promptly. If a person to whom a court directs an order believes that order is incorrect the remedy is to appeal, but, absent a stay, he must comply promptly with the order pending appeal. Persons who make private determinations of the law and refuse to obey an order generally risk criminal contempt even if the order is ultimately ruled incorrect. The orderly and expeditious administration of justice by the courts requires that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings.

*Maness v. Meyers*, 419 U.S. 449, 458-59 (1975) (internal marks and citations omitted). Neither the State of Alabama nor Mr. Bentley has challenged the state circuit court judge's finding that Mr. Bentley suffers from dissociative identity disorder, and neither has challenged the circuit court's finding that Mr. Bentley still requires treatment. The fact that the Department does not have a staff member capable of treating Mr. Bentley does not excuse compliance. By analogy, a state prison could not refuse to comply with a court order directing the prison to treat a prisoner's broken arm because the prison did not have an orthopedist on staff. The Department may determine how to provide treatment, but the Department must

provide treatment. The Department's refusal to provide treatment invites a contempt motion.[8]

The Court acknowledges that the Alabama Department of Health has stated that Mr. Bentley's "state law remedies to accomplish release from confinement are limited and have been exhausted." (Doc. 14, p. 5). The Department offers no explanation for this conclusory statement, and the Department has not suggested that Mr. Bentley has raised his federal constitutional challenge to his continued confinement in a state court. Moreover, to waive the exhaustion requirement under § 2254, the State of Alabama must act through its Attorney General. *Hills v. Washington*, 441 F.3d 1374, 1376 (11th Cir. 2006). The Attorney General has attempted to intervene in this matter to make clear that the State of Alabama does not waive the exhaustion requirement in this case. (Doc. 13, pp. 3, 12-15). And even if the Attorney General had waived the exhaustion requirement, this Court nevertheless would require Mr. Bentley to raise his due process challenge first in

---

[8] In its order of mandamus to the circuit court judge, the Alabama Court of Criminal Appeals held that a state circuit court may not "dictate a treatment regimen for an individual that the Department is charged with treating." (Doc. 14-6, p. 4). The mandamus order does not excuse the Department from treating Mr. Bentley. The order simply allows the Department to choose how to provide treatment.

The record suggests that the Department is not the only party refusing to comply with the order of the circuit court. According to the circuit court judge, since 2011, Mr. Bentley "has been uncooperative with staff and has refused to attend treatment because he claims not to have a problem." (Doc. 14-1, p. 11). Mr. Bentley cannot obtain his release under a Rule 25.8 order if he refuses court-ordered treatment for a serious mental illness.

state court because Mr. Bentley continues to have a viable avenue for litigation of his federal constitutional challenge to his confinement in state court, and comity demands that a state court have the first full and fair opportunity to resolve the matter. *See Esslinger v. Davis*, 44 F.3d 1515, 1524-29 & n. 34 (11th Cir. 1995). As a respondent in the state proceeding, the Attorney General will be assured of an opportunity to address Mr. Bentley's constitutional challenge.[9]

Mr. Bentley argues that if he attempts to raise his due process challenge to his confinement at Taylor Hardin in the state circuit court, the state court "very likely" will commit him to the Alabama Department of Corrections "without being convicted of a crime" because the "state trial court has shown that it will send [Mr. Bentley] to ADOC to prevent further requests for [his] release." (Doc. 1, pp. 5-6). The assertion is baseless and an unfair and improper characterization of the state court proceedings in this matter.

In his order denying the Alabama Department of Mental Health's "Notice of Proposal for Release" of Mr. Bentley from confinement at Taylor Hardin, the state circuit court judge, "to ensure the safety of the staff and other patients at Taylor

---

[9] In his report, the magistrate judge discussed the Attorney General's role in this habeas proceeding. (Doc. 18, pp. 17-31) (finding that the State of Alabama is the real party in interest and recommending that the Court construe the Attorney General's response in opposition to Mr. Bentley's habeas petition as a motion to intervene pursuant to Rule 24 of the Federal Rules of Civil Procedure). Because the Court will dismiss this matter for failure to exhaust available state remedies, the Court does not address the Attorney General's effort to intervene.

Hardin," ordered the Department to transfer Mr. Bentley "to a secure facility operated by the Alabama Department of Corrections where Bentley is to receive treatment for dissociative identity disorder until Bentley is cured of mental illness, if ever." (Doc. 1-1, p. 24). The circuit court judge based this order on records before him which indicated that Mr. Bentley was "terrorizing" other patients and staff members of Taylor Hardin. (Doc. 1-1, p. 23). The circuit court judge was trying to assist the Department in its efforts to provide for "the safety of its staff and other patients." (Doc. 1-1, p. 23; *see also* Doc. 14-9, pp. 2-3). After the Alabama Court of Criminal Appeals affirmed the authority of the circuit court judge to issue such a transfer order and the Alabama Supreme Court refused the Department's request for review (Docs. 14-6, 14-7), the circuit court judge granted the Department's motion to vacate the transfer provision in the order denying the Department's request to release Mr. Bentley. (Doc. 14-9). Nothing in the record suggests that the state circuit court would *sua sponte* order Mr. Bentley's transfer to ADOC if Mr. Bentley were to raise a federal due process challenge to his continued confinement in state court.

Having reviewed and considered the materials in the record, the Court dismisses Mr. Bentley's habeas petition because he has not exhausted the state court remedies available to him. Before he may present his federal constitutional

challenge to his continued confinement at Taylor Hardin in a federal habeas action, he must present that challenge in state court and give Alabama's courts a fair opportunity to consider and resolve the constitutional question.

Because the petition does not present issues that are debatable among jurists of reason, the Court denies a certificate of appealability. *See* 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484-85 (2000); Rule 11(a), Rules Governing § 2254 Proceedings.

The Court will enter a separate final order consistent with this memorandum opinion.

**DONE** this 22nd day of January, 2020.

_____
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE